**SIGNED THIS: September 20, 2011**

　

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　**MARY P. GORMAN**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 09-72295 |
| JEFFREY R. PROCHNOW, ) | |
| ) | Chapter 7 |
| Debtor. ) | |

# **O P I N I O N**

　　　Before the Court is the request of the Debtor to hold his former employer, Apex Properties, Inc., d/b/a ReMax Choice of Bloomington, Illinois, in contempt for violating the automatic stay by withholding real estate commissions the Debtor claims are due to him. Unfortunately for the Debtor, the commissions, which were earned pre-petition but payable post-petition, were not disclosed by him on his schedules and, therefore, he is judicially estopped from claiming an enforceable interest in them. Further, the actions of his employer in withholding the commissions were in the nature of recoupment and, accordingly, those actions did not violate the automatic stay.

-1-

## I. Factual and Procedural Background

Jeffrey R. Prochnow ("Debtor"), represented by Attorney Jason S. Bartell, filed his voluntary petition under Chapter 7 on August 3, 2009. At that time, he was employed as a real estate salesperson by Apex Properties, Inc., d/b/a ReMax Choice ("ReMax"). On his Schedule F, Debtor listed an unsecured debt to ReMax in the amount of $51,027.47. On his Schedule B, Debtor affirmatively represented that he had no accounts receivable, no liquidated debts owed to him, and no contingent or unliquidated claims of any nature. Debtor's meeting of creditors was held on September 3, 2009, and, on that same date, A. Clay Cox, the Chapter 7 Trustee, filed a Report of No Distribution stating that he found no assets to administer in the case. The Debtor was granted a discharge on December 3, 2009. His case was closed on February 23, 2010.

On June 16, 2010, the Debtor, now represented by Attorney Mercer Turner, filed a Motion to Reopen Case. In his Motion to Reopen Case, the Debtor alleged that he had earned $15,323 in real estate commissions from ReMax after his case was filed but that none of that amount had been paid to him. He claimed that ReMax had applied all of his post-petition commissions to the payment of the over $51,000 Debtor owed ReMax pre-petition. Debtor claimed that ReMax's conduct violated the automatic stay and asked that the case be reopened so that he could pursue contempt proceedings. A proposed Motion for a Finding of Contempt was attached as an exhibit to the Motion to Reopen Case.

At the hearing on the Motion to Reopen Case, ReMax appeared by counsel and objected to the reopening claiming that the Debtor was not entitled to the relief requested in his proposed Motion for a Finding of Contempt. Over ReMax's objection, the case was reopened. Subsequently, the Debtor filed a Motion For A Ruling Against A Creditor Based on Violation of the Automatic Stay ("Contempt Motion"). The Contempt Motion contains essentially the same facts and arguments as

set forth in the Motion to Reopen Case.[1] The parties have completed discovery and filed a Joint Stipulation of Facts.

Debtor was, at all relevant times, a licensed real estate salesperson and ReMax was a duly licensed real estate broker. Debtor and ReMax, through a predecessor entity, signed a Broker-Realtor-Associate Contract ("Associate Contract") on August 23, 2006. The Contract provided, *inter alia*, for the Debtor to sell real estate through the ReMax brokerage and to receive commissions for such sales. The Associate Contract also required ReMax to maintain offices and to provide the Debtor with office equipment, telephone systems, open house signs, advertising, and other assistance necessary for the Debtor to sell real estate in a gainful manner. The Debtor was required, however, to reimburse ReMax for some of those expenses. The Associate Contract refers to various schedules and manuals for the amounts of the commissions to be paid and the expenses to be charged. The parties agree that, since October 2007, Debtor was to be paid 70% of the commissions he earned with ReMax retaining the remaining 30% in exchange for ReMax not charging the Debtor monthly rent. Other expenses continued to be billed to the Debtor from time to time by ReMax, and portions of commissions earned by the Debtor were applied to pay outstanding expenses. Debtor admits that, at the time he filed this case, he owed ReMax $51,027.47 for accrued expenses.

On June 22, 2009, Debtor, in his capacity as a salesperson for ReMax, procured buyers for a parcel of real estate in Hudson, Illinois. The buyers entered into a contract with the sellers and agreed to pay $785,000 for the real estate. An initial Real Estate Purchase Agreement was signed on June 22, 2009, and an updated final Contract for Sale of Real Estate ("Hudson Contract") was signed

---

[1] The Contempt Motion actually seeks relief against ReMax and its president, William E. Brady. However, neither the Contempt Motion nor any other pleading or document filed by the Debtor alleges any direct involvement in the complained of conduct by Mr. Brady. Further, no grounds for piercing the corporate veil to impose liability on Mr. Brady are set forth. Accordingly, the limited allegations as to Mr. Brady will not be further addressed, and this Court specifically finds that, even if ReMax were determined to have some liability to the Debtor, no liability would be imposed on Mr. Brady individually.

on July 25, 2009. The Hudson Contract closed on August 21, 2009. As the listing broker, ReMax received a 6% commission in the amount of $47,100 at the closing. The parties agree that Debtor's share of that commission as the selling agent was $13,829.27. ReMax retained the entire amount of the Debtor's commission and applied it to the balance due for his expenses. Although Debtor had filed his case on August 3, 2009, he did not list his entitlement to the Hudson Contract commission on his schedules. Debtor made no complaint to this Court about ReMax retaining the Hudson Contract commission until he filed his Motion to Reopen in June 2010.

After filing his bankruptcy case, Debtor also assisted in procuring buyers for two other properties and was entitled to commissions when those transactions closed in the total amount of $1494.39. The parties stipulated that the Debtor incurred post-petition indebtedness to ReMax for office expenses in an amount of at least $1600.50. ReMax billed the Debtor $3596.03 in post-petition expenses. However, the Debtor asserts that he does not owe $1995.53 of that amount which is for post-petition interest on the pre-petition balance due. ReMax retained the entire $1494.39 and applied that amount to the Debtor's post-petition expenses.

In addition to their Joint Stipulation of Facts, the Debtor filed a Motion for Summary Judgment and ReMax filed a Motion for Summary Determination. Both parties have had an opportunity to fully brief the issues and the matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction to hear the pending matter pursuant to 28 U.S.C. § 1334. The issues to be decided are core proceedings. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

### III. Legal Analysis

### A. Summary Judgment Standards

Summary judgment is an encouraged method of resolving cases where no material facts are in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment has the burden of establishing that there are no material facts in dispute and that the party is entitled to judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552. A factual dispute is material only if the disputed fact is determinative of the outcome of the issues to be decided. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994). Summary judgment is appropriate in cases involving contract interpretation where the contract terms are not ambiguous. *See Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir. 1989).

Motions for summary judgment filed in this Court must comply strictly with the Local Rules of the District Court of the Central District of Illinois. *See* CDIL-LR 7.1(D); *In re Clayton*, 369 B.R. 383, 388 (Bankr. C.D. Ill. 2007); *In re Campbell,* 372 B.R. 886, 890 (Bankr. C.D. Ill. 2007). The Seventh Circuit has stated that local rules governing summary judgment practice "reflect an attempt to make the parties' respective summary judgment obligations explicit" and has consistently upheld "strict enforcement" of such local rules. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

Local Rule 7.1(D) requires summary judgment movants to set forth a numbered list of undisputed facts with a citation to the record for each fact. The non-moving party must respond to each alleged undisputed fact by conceding that it is undisputed, by disputing it with citation to the record supporting the dispute, or by asserting that the fact is not material with an explanation of the lack of materiality. The non-moving party may also set forth additional undisputed facts to which

the original movant must respond by conceding, disputing, or alleging non-materiality. *See* CDIL-LR 7.1(D). This process is necessary in order to determine whether any material facts are actually in dispute.

Here, both the Debtor and ReMax have consistently asserted that there are no material facts in dispute. In furtherance of that position, they filed their Joint Stipulation of Facts. Although not expressly contemplated by Local Rule 7.1(D), stipulated facts are certainly within the spirit of the Local Rule and are an acceptable way to avoid the back and forth procedure otherwise required. A problem exists, however, because, despite the Joint Stipulation of Facts, the Debtor's arguments rely on facts not included in the Joint Stipulation or otherwise specifically identified, as required by Local Rule 7.1(D).

Debtor includes in his arguments a request for this Court to take judicial notice of the practice of paying certain commissions in the Bloomington area. He also includes passages from correspondence between his current attorney and his original attorney. Debtor offers a chart of the post-petition expenses he claims he owed to ReMax which directly conflicts with the amount of such expenses stipulated to by the parties. None of this information is set forth in the Joint Stipulation or in a statement of undisputed facts in the Debtor's Motion for Summary Judgment. In large part, these additional facts are irrelevant and none appears to be determinative of the outcome of the pending matter. But, to the extent the Debtor asserts that any of these additional facts are material, he has waived that argument because of his failure to comply with Local Rule 7.1(D). The failure to comply with local rules may result in serious consequences to the offender. *See Waldridge*, 24 F.3d at 922. Here, the additional facts set forth by the Debtor in his arguments in violation of Local Rule 7.1(D) will be ignored.

### B.      The Hudson Contract Commission was Property of the Debtor's Bankruptcy Estate

The bulk of the commissions at issue here were the result of the closing of the Hudson Contract. Debtor argues that, because the closing occurred post-petition, he had no recognizable interest in the commission at the time he filed bankruptcy and, therefore, his share of the Hudson Contract commission was not property of his bankruptcy estate. However, the Debtor's argument is seriously flawed; his share of the commission was property of the bankruptcy estate and, because it has never been abandoned, it remains property of the estate.

When a case is commenced, an estate is created which consists generally of all of a debtor's legal or equitable interests in property. 11 U.S.C. § 541(a)(1). The term "property" has been broadly construed and includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative[.]" *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *relying on In re Anderson*, 128 B.R. 850, 853 (D.R.I. 1991). Property of the estate includes contingent interests in future income. *See In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990).

Bankruptcy courts must look to state law to determine whether a debtor actually has any legal or equitable interest in property when a case is commenced. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979). However, the ultimate decision about whether a debtor's interest in property is sufficient for such property to become "property of the estate" is a federal question to be decided by federal law. *See Matter of Jones*, 768 F.2d 923, 926-27 (7th Cir. 1985).

Here, Debtor's claim to the Hudson Contract commission is based on the Associate Contract which provides that he will be paid commissions for procuring buyers for properties listed with ReMax. The Associate Contract was entered into pre-petition and, more importantly, the Hudson Contract, which bound the buyer procured by the Debtor to the transaction, was entered into pre-

petition. Under Illinois law, based on these facts, Debtor had a contractual right to his share of the Hudson Contract commission when he filed this case. Debtor's contention in his arguments that nothing he did pre-petition resulted in his post-petition earnings is simply not true. The only reason he could possibly be entitled to a share of the Hudson Contract commission was that he procured the buyer for the Hudson property in June before he filed this case.

Illinois courts hold that the law controlling when a broker is entitled to a commission for the sale of real estate is "well settled." *Hallmark & Johnson Properties, Ltd. v. Gadea*, 218 Ill. App. 3d 921, 926, 578 N.E.2d 1180, 1184 (1991). A broker is entitled to a commission for the sale of real estate when he procures a buyer who is ready, willing, and able to purchase the real estate on the terms prescribed by the seller. *Id.*; *Zink v. Maple Inv. & Dev. Corp.*, 247 Ill. App. 3d 1032, 1037, 617 N.E.2d 1269, 1273 (1993). A purchaser is ready, willing, and able to purchase if he has entered into a binding contract for the purchase and has sufficient funds on hand to complete the purchase or is able to obtain such funds within an agreed period of time. *Hallmark & Johnson*, 218 Ill. App. 3d at 926, 578 N.E.2d at 1184.

The Debtor does not dispute this settled law or that ReMax had a clear entitlement to the Hudson Contract commission from the seller in that transaction when this case was filed. It is undisputed that, once the Hudson Contract was signed and the financing contingency set forth in the contract was met, ReMax, as the broker in the transaction, had earned its commission. ReMax was then obligated by the Associate Contract to pay a share of the commission to the Debtor. In other words, at the time this case was filed, ReMax had a vested right to collect its commission from the seller under the Hudson Contract, and Debtor had a vested right to collect his share of that commission from ReMax. The fact that the Hudson Contract seller did not actually have to pay ReMax until closing and ReMax did not have to pay Debtor until it collected from the seller is irrelevant to the issue at hand. The commission was earned pre-petition, and the fact that it was

-8-

payable post-petition does not change the fact that it was property of the Debtor's estate. *See In re Pfister*, 1998 WL 34070557, at *2 (Bankr. C.D. Ill. Sep. 2, 1998); *In re Brandon* 184 B.R. 157, 160 (Bankr. N.D. Fla. 1995). Further, the fact that the Hudson Contract might not have closed for any number of reasons beyond the control of ReMax or the Debtor and the Hudson Contract seller might then have refused to pay the commission does not change the result here. Contingent property interests are property of the estate. *Yonikus*, 996 F.2d at 869.

The finding that the Hudson Contract commission was earned pre-petition and is property of the estate creates an impediment to Debtor's action here. Debtor is judicially estopped from asserting a right to the commission and seeking relief from this Court. Judicial estoppel is a common law doctrine which prevents a party from asserting a position in a legal proceeding which is inconsistent with a position the same party successfully asserted in an earlier proceeding. See *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001). In the bankruptcy context, judicial estoppel applies to ensure that a debtor "who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

Judicial estoppel is used to protect the integrity of the courts. *See Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). Unlike equitable estoppel, no prejudice to another litigant need be shown for a court to exercise judicial estoppel. The exercise is within the sound discretion of the court. *See In re Envirodyne Industries, Inc.*, 183 B.R. 812, 824 (Bankr. N.D. Ill. 1995). Here, the Debtor's conduct in failing to disclose his interest in the Hudson Contract commission justifies this Court's exercise of judicial estoppel.

Debtors must disclose their assets on their schedules when they file a bankruptcy case. 11 U.S.C. § 521(a)(1)(B)(i). The schedules are signed under penalty of perjury. *See* Official Form 6-Declaration; *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001). Here, the Debtor affirmatively

represented on his schedules that he had no accounts receivable, no liquidated debts owed to him, and no contingent or unliquidated claims of any nature. However, when he filed, the Debtor knew that he had procured the buyer for the Hudson Contract and that the transaction was scheduled to close within weeks. His claim for a commission based on the Hudson Contract was clearly known to him when he filed and it should have been disclosed. *See Envirodyne Industries*, 183 B.R. at 821 n.17. Having affirmatively failed to disclose the commission and then having received the resulting benefits of the bankruptcy case including a discharge, the Debtor is judicially estopped from claiming an interest in the commission now.

Moreover, the Debtor has no standing to pursue the Hudson Contract commission because his entitlement to the commission became property of the estate and was never abandoned by Trustee Cox. When Trustee Cox filed his Report of No Distribution, the case started down the road to closure. When the case was closed, property that was scheduled but not administered was deemed abandoned. 11 U.S.C. § 554(c). However, because the Hudson Contract commission was never scheduled, it was not deemed abandoned by the case closure and remains property of the estate. 11 U.S.C. § 554(d); *In re Enyedi*, 371 B.R. 327, 334 (Bankr. N.D. Ill. 2001).

These findings are not an invitation to the Debtor to seek reappointment of Trustee Cox in the hope that he will abandon the estate's claim to the Hudson Contract commission. Even if Trustee Cox were to be reappointed and were to abandon the commission, the principles of judicial estoppel would still apply to limit Debtor's claim to the undisclosed commission. *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1160 (10th Cir. 2007); *Casey v. Peco Foods, Inc.*, 297 B.R. 73, 78 (S.D. Miss. 2003). And, in any event, if Trustee Cox pursued the commission for the benefit of the estate or the Debtor attempted to pursue it after abandonment, as explained below, ReMax would prevail on its defense of recoupment.

### C. ReMax's Actions in Retaining Commissions from Post-Petition Closings was Recoupment

ReMax argues that its retention of commissions earned by the Debtor from the Hudson Contract and from the several small post-petition transactions was in the nature of recoupment and did not violate the automatic stay. ReMax is correct on both counts.

Recoupment is a common law doctrine whereby a defendant can respond to a plaintiff's claim with a counterclaim arising from the same transaction which serves to abate or reduce the plaintiff's claim. *See In re Klingberg Sch.,* 68 B.R. 173, 178 (N.D. Ill. 1986), *aff'd* 837 F.2d 763 (7th Cir. 1988). In the bankruptcy context, where a creditor's claim against a debtor arises from the same transaction as the debtor's claim against the creditor, recoupment is essentially a defense to the debtor's claim. *Id.*; *In re Midway Airlines, Inc.*, 221 B.R. 411, 462 (Bankr. N.D. Ill. 1998). In order for recoupment to be an available defense, the transaction upon which the debtor's claim is based must be so closely intertwined with the creditor's claim that the amount of the former cannot be fairly determined without resolving the latter. *See In re Chapman*, 265 B.R. 796, 807 (Bankr. N.D. Ill. 2001); *In re Clark Retail Enterprises, Inc.*, 2003 WL 21991624, at *9 (Bankr. N.D. Ill. Aug. 18, 2003).

The exercise of recoupment rights does not violate the automatic stay. *See In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997); *Clark Retail*, 2003 WL 21991624, at *10 (collecting cases). Further, unlike setoff, recoupment does not require that both of the competing claims arose pre-petition. *See In re Stratman*, 217 B.R. 250, 252-53 (Bankr. S.D. Ill. 1998).

Here, the Debtor's claim against ReMax arises from the contractual obligation of ReMax to pay the Debtor commissions pursuant to the terms of the Associate Contract. ReMax's claim against the Debtor arises from the Debtor's obligation to reimburse ReMax for business expenses advanced pursuant to the Associate Contract. The parties have stipulated that their course of conduct was that

unpaid business expenses were deducted by ReMax from commissions as they were earned and became payable to the Debtor. The fact that the same contract forms the basis for each claim does not necessarily mean that both claims arise from the same transaction. *See Clark Retail*, 2003 WL 21991624, at *11. However, in this case, the rights of the parties pursuant to the Associate Contract are so intertwined that this Court must find that the obligations do arise from the same transaction.

The parties here stipulated not only to the fact that $51,027.47 was due to ReMax from the Debtor for business expenses at the time of filing but also as to a precise accounting of the amounts due. That accounting shows that ReMax billed the Debtor for postage, insurance, copies, advertising, multiple listing service dues, and other expenses generally associated with operating a real estate sales office. The Debtor does not dispute any of the charges. More importantly, the Debtor has not suggested that any of the specific charges are not subject to recoupment. Rather, the Debtor has simply defended on a broad argument that the recoupment does not apply to any of the charges. Debtor might have argued that some of the charges, such as those which are specifically identified as related to closing costs for other properties, do not arise from the same transaction as the Hudson Contract commission and, therefore, are not subject to recoupment. Debtor made no such argument. Further, the total of such charges appears to be insufficient to reduce the balance of the charges to an amount below what was recouped.

The charges to the Debtor were made by ReMax for providing the basic necessities for the Debtor to earn a living as a real estate salesperson. The services provided and the advances made by ReMax allowed the Debtor to establish himself as a real estate salesperson in the Bloomington community and to earn the commissions which are now at issue. Any debt ReMax owes the Debtor pursuant to the Associate Contract arises only because the Debtor is a licensed real estate salesperson who was able to use the offices of ReMax to conduct his business. Moreover, any amounts ReMax might owe the Debtor for commissions earned pursuant to the Associate Agreement can only be fully

determined by also calculating the amount that the Debtor owes ReMax pursuant to that same agreement. Under those circumstances, recoupment is appropriate.

Debtor's only stated defense to ReMax's recoupment of expenses from the commissions is his assertion that recoupment requires proof that the creditor's claim is based on an overpayment. It is true that some courts have held that an element of recoupment is overpayment. *See, e.g.*, *Stratman*, 217 B.R. at 252; *In re Health Management L.P.*, 336 B.R. 392, 396 (Bankr. C.D. Ill. 2005). Many courts, however, require only that the obligations arise from the same transaction and do not include the requirement that one of the obligations be in the nature of an overpayment in order for recoupment to be appropriate. *See, e.g., Klingberg Sch.*, 68 B.R. at 178; *In re Rooster, Inc.*, 127 B.R. 560, 567 (Bankr. E.D. Pa. 1991); *Chapman*, 265 B.R. at 807.

Further, even if overpayment is a requirement of recoupment, ReMax's advances of expenses for the Debtor would meet that requirement. The Associate Contract clearly contemplated that, from time to time, ReMax would expend funds over and above what it might owe to the Debtor for commissions earned and that the accounts would be reconciled as funds became available. Further, the parties stipulated that their actual course of conduct was that outstanding expenses due to ReMax were regularly deducted from commissions which became payable to the Debtor. Under such circumstances recoupment was proper. ReMax was entitled to retain all of the Hudson Contract commission and all of the commissions earned from the post-petition transactions and did not violate the automatic stay in doing so.

    **D.**    **ReMax was also Entitled to Set Off its Claims Against the Debtor's Share of the Hudson Contract Commission**

The Debtor argues that ReMax's actions in retaining the entire Hudson Contract commission were not recoupment but rather setoff. Because a creditor must obtain relief from stay in order to exercise setoff rights, the Debtor incorrectly assumes that, because ReMax did not obtain relief from

stay, ReMax loses it potential setoff rights. Debtor's logic is flawed. Even if ReMax's actions were in the nature of setoff rather than recoupment, ReMax would ultimately have prevailed in its attempt to retain the Debtor's share of the Hudson Contract commission.

Setoff is allowed in bankruptcy cases so that a creditor may offset a mutual debt owed to a debtor in collection actions on behalf of the debtor or the estate. *See* 11 U.S.C. § 553. Although debts subject to setoff must be mutual, they may arise out of different transactions which occurred at different times. *See In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003). However, a pre-petition debt may only be set off against a mutual pre-petition obligation.[2] *Id.*

Here, as explained above, the Hudson Contract commission was earned pre-petition and ReMax's obligation to pay the Debtor a share of that commission arose pre-petition. Thus, that pre-petition debt of ReMax to the Debtor can be set off against the Debtor's acknowledged pre-petition debt to ReMax. Had the Debtor properly disclosed the Hudson Contract commission and had the Trustee or the Debtor attempted to collect the commission from ReMax in a timely fashion, ReMax could have raised its right of setoff as a complete defense.

The exercise of setoff rights does require relief from stay. However, placing a temporary freeze on assets while a request for stay relief is pending does not violate the automatic stay. *See Citizens Bank of Md. v. Strumf*, 516 U.S. 16, 21, 116 S. Ct 286, 290, 133 L. Ed. 2d 258 (1995). If the Debtor had properly disclosed the Hudson Contract commission, it is likely that the Trustee would have inquired of ReMax regarding the commission and might well have come to the conclusion, as this Court has done, that ReMax had a right of recoupment with respect to the commission. Had the Trustee and ReMax differed on that issue, however, ReMax might then have

---

[2] ReMax's retention of the $1494.39 that the Debtor earned post-petition could not be justified as a setoff under § 553. However, Debtor admitted that he incurred at least $1600.50 in post-petition expenses with ReMax. The automatic stay would not protect the Debtor's post-petition earnings from being charged for post-petition business expenses as allowed by the Associate Contract which the Debtor claims was renewed post-petition.

-14-

sought stay relief to ensure that its permanent withholding of the commission was authorized regardless of whether recoupment or setoff applied.

ReMax was entitled to retain all of the Hudson Contract commission as recoupment or setoff. And, even if there was a stay violation — and this Court does not find that there was — Debtor has not alleged any actual damages for that violation. His only claimed damages are for attorney fees for the unsuccessful prosecution of his claim to a share of the Hudson Contract commission and, because that claim has no merit, he is not entitled to be awarded fees under any circumstances.

### IV. Conclusion

The Debtor failed to disclose his interest in a share of the Hudson Contract commission on his schedules and, accordingly, is judicially estopped from claiming an interest in those funds now. Further, ReMax's retention of all of the commissions at issue was in the nature of recoupment and did not violate the automatic stay. The Debtor has not established any entitlement to the relief he seeks from this Court. Debtor's Motion for Summary Judgment will be denied. ReMax's Motion for Summary Determination will be granted. Debtor's Motion For A Ruling Against A Creditor Based on Violation of the Automatic Stay will be denied in all respects with prejudice.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###